# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

STACY L. FISHER
and ASHLEY C. FISHER,

    *Defendants.*

Case No. 13-10145-EFM

## MEMORANDUM AND ORDER

This matter comes before this Court on Stacy Fisher's Motion to Suppress (Doc. 20), which is joined by co-defendant Ashley Fisher. The Fishers contend that all evidence found in their residence after Stacy Fisher's arrest should be suppressed because it was found during an invalid protective sweep in violation of the Fourth Amendment. Because the Court finds that the evidence would have been inevitably discovered under a valid search warrant, the Court denies the motion in its entirety.

### I. Factual and Procedural Background

In February 2013, a confidential informant notified the Sedgwick County Sheriff's Office that Stacy Fisher was selling cocaine from his residence at 815 N. Battin in Wichita, Kansas. The informant, who was a suspect in several recent retail thefts, reported that he paid off a drug debt to Fisher with stolen electronics and five one-gallon bottles of Tide laundry detergent on

February 25, 2013, at Fisher's residence. The informant also reported that he was present when Fisher received a 30-30 rifle in exchange for drugs. During the course of the investigation, officers discovered an outstanding federal arrest warrant for Fisher for various violations of his supervised release stemming from his conviction for being a felon in possession of a firearm.

On February 28, 2013, federal and Sedgwick County officers executed this arrest warrant at Fisher's residence. A deputy U.S. Marshal knocked, announced law enforcement presence, and ordered the occupants of the residence to open the door. The officer repeated this action, and it was apparent that someone had come to the door, said "it's the cops" or "it's the police," and retreated toward the hallway. After no further response, the officers forced the door open with a ram, knocking the door off its hinges and onto the living room floor. Once inside, officers encountered a young black female, later identified as the Fishers' 17-year-old daughter, who told officers that she and her mother, later identified as Ashley Fisher, were the only people in the house. Officers then directed Ashley Fisher and her daughter to leave the house, and the officers continued to call for Stacy Fisher.

After officers sent a dog into the house, Stacy Fisher eventually emerged and walked outside where he was handcuffed on the front porch and placed in a patrol car. An officer asked Fisher if anyone else was in the house. At the suppression hearing, the officer testified that Fisher "just smiled at me and didn't say a word." The officer testified that he was concerned that someone else may have been in the house because of Fisher's lack of response and his ties to a street gang. The officer then authorized a protective sweep to make sure that no one else was in the house. As officers went through the house, an officer lifted a mattress and discovered a handgun between the mattress and the box springs. Officers also discovered five laundry detergent bottles and several televisions in the basement.

Based on these discoveries and the information provided by the confidential informant, a sheriff's detective applied for a search warrant, which was issued and executed the same day. While executing the search warrant, officers seized a shotgun, ammunition, and approximately 20 grams of cocaine base. Officers then secured the residence by fixing the broken door.

In September 2013, a federal grand jury returned a five-count indictment charging Stacy Fisher and Ashley Fisher each with: 1) possession with the intent to distribute cocaine base, 2) being a felon in possession of the handgun, 3) being a felon in possession of the shotgun, 4) being a felon in possession of ammunition, and 5) possession of a firearm in furtherance of a drug trafficking crime. Stacy Fisher filed this Motion to Suppress (Doc. 20), and this Court has granted Ashley Fisher's motion to join the Motion to Suppress.

**II. Analysis**

The Fishers challenge the search of their home, asserting that the seizure of evidence was the result of an unauthorized protective sweep. During this unauthorized protective sweep, the Fishers argue, officers found a handgun under a mattress and used this discovery to obtain a search warrant. Because looking under a mattress is not authorized during a valid protective sweep, the Fishers argue that the handgun was illegally obtained. In turn, the Fishers argue, that means the entire search warrant must be invalidated because the illegally obtained handgun served as the basis to meet the probable cause and particularity burden necessary to obtain the search warrant. As a result, all evidence found should be suppressed.

The government disagrees, asserting that the protective sweep was valid because the officers had a legitimate concern that other people could be inside the residence. Alternatively, the government argues that even if the Court finds that the protective sweep was unwarranted, the evidence should not be suppressed because it would have been inevitably discovered.

**A.** *The Protective Sweep Was Appropriate for Officer Safety.*

When the subject of an arrest warrant is found, law enforcement officers are allowed to conduct a brief search as an incident to the arrest, often called a "protective sweep."[1] The legitimate purpose of a protective sweep is for officer safety.[2] As a precautionary matter and without probable cause or reasonable suspicion, officers may look in closets and other spaces immediately adjoining the place of arrest from which another person could launch an attack.[3] There must be articulable facts, taken together with the rational inferences from those facts, that would justify a reasonably prudent officer's belief that a person posing a danger to the officers could be in the area to be swept.[4]

But a protective sweep does not authorize a full search of the premises. A protective sweep is limited to a "cursory inspection of those spaces where a person may be found" and "lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises."[5] In sum, the "Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene."[6]

---

[1] *Maryland v. Buie*, 494 U.S. 325, 334 (1990).

[2] *Id.* at 335.

[3] *Id.* at 334.

[4] *Id.*

[5] *Id.* at 335-36.

[6] *Id.* at 337.

Here, the Court finds that the protective sweep was appropriate given Stacy Fisher's criminal history, the responses of the occupants of the house, and the fact that officers had to stay at the house until the front door was secure. At the suppression hearing, there was testimony that officers were aware of Fisher's prior conviction for being a felon in possession of a firearm and prior arrests for violent crimes. An officer also testified that Fisher was listed as a member of a street gang known to be violent and that officers were concerned that other gang members could be inside the house. The same officer testified that he asked Fisher if anyone else was in the house, and Fisher "just smiled at me and didn't say a word." According to the officer, Fisher's lack of verbal response and the "sly grin on his face" caused concern that there might be someone else in the house. Plus, there was testimony that officers heard sounds associated with movement from inside the house (which turned out to be dogs).

Even though Fisher was arrested outside the house, officer safety was still an issue. Another officer testified that they had a duty to stay at the residence to secure the door that had been broken to gain entry. At this point, the two females were not under arrest and were entitled to return to the house. A person hiding inside the house could have posed a danger to officers tasked with securing the door. The Court finds that all of these factors, taken together, make the protective sweep appropriate for officer safety.

However, the Court has concerns about officers searching under the mattress. Anyone hiding under a mattress would be apparent unless he was in a hollowed-out box spring. But based on looking at photographs of the bed in Exhibits 6 and 7, it was unlikely that someone was hiding under the mattress or in a hollowed-out box spring. And it would have been difficult for someone hiding in such a fashion to be a threat to officer safety. So the Court is concerned that the search under the mattress may not have been appropriate for a protective sweep.

**B.** *The Inevitable Discovery Rule Applies to Make the Evidence Admissible.*

If the search under the mattress was inappropriate for a protective sweep because the search went beyond a "cursory inspection of those spaces where a person may be found," then the handgun found under the mattress must be considered to be illegally obtained.[7] This motion, then, turns on the inevitable discovery rule. The government argues that even if the discovery of the handgun was removed from the affidavit in support of the search warrant, there existed probable cause to search for stolen property and drugs inside the house.

The inevitable discovery rule permits evidence to be admitted "if an independent, lawful police investigation inevitably would have discovered it."[8] Even if the Fishers have shown that the handgun was illegally obtained during the protective sweep, "the government may avoid suppression by demonstrating that the evidence would have been inevitably discovered, that it was discovered by independent means, or that it was so attenuated from the illegality as to dissipate any taint from the Fourth Amendment violation."[9] When the investigation involves a search warrant, "[t]he government's inevitable discovery theory requires that the affidavit, stripped of the evidence obtained during the unconstitutional sweep, establish sufficient probable cause to support the search warrant."[10] That's because "[a]n affidavit containing erroneous or unconstitutionally obtained information invalidates a warrant if that information was critical to

---

[7] See *id.* at 335-36.

[8] *United States v. Cunningham*, 413 F.3d 1199, 1203 (10th Cir. 2005).

[9] *United States v. Torres-Castro*, 470 F.3d 992, 999 (10th Cir. 2006).

[10] *United States v. Roof*, 103 Fed. Appx. 652, 660 (10th Cir. 2004).

establishing probable cause. If, however, the affidavit contained sufficient accurate or untainted evidence, the warrant is nevertheless valid."[11]

A court may use the inevitable discovery rule "only when it has a high level of confidence that the warrant in fact would have been issued and that the specific evidence in question would have been obtained by lawful means."[12] This requires the court "to examine each of the contingencies involved that would have had to have been resolved favorably to the government in order for the evidence to have been discovered legally and to assess the probability of the contingencies having occurred."[13]

Here, the question is whether there was sufficient probable cause for a search warrant if the affidavit excluded the handgun found under the mattress. The search warrant application affidavit included the following statement: "In the course of making the arrest of Fisher, U.S. Marshalls located a handgun in the residence under a mattress. Marshalls also observed four one-gallon bottles of Tide laundry detergent bottles and four flat screen televisions. The marshalls then backed out of the residen[ce] pending a search warrant being obtained."

If the affidavit did not include the brief reference to the handgun found under the mattress, the Court finds that a valid search warrant still would have been issued. It is not the strongest warrant this Court has ever seen, but that is not before the Court. The Court notes that the affidavit referenced the confidential informant observing a "30-30 rifle," which is not what was found during the sweep. If anything, removing the reference to the handgun actually found

---

[11] *United States v. Snow*, 919 F.2d 1458, 1460 (10th Cir. 1990) (citing *United States v. Karo*, 468 U.S. 705, 719 (1984)).

[12] *United States v. Souza*, 223 F.3d 1197, 1205 (10th Cir. 2000).

[13] *Id.*

makes the affidavit stronger. While searching under the mattress may have been inappropriate under the circumstances of this particular protective sweep, the rest of the protective sweep was appropriate for officer safety. In the course of this protective sweep, officers discovered in open space five bottles of laundry detergent and televisions. This was consistent with what the confidential informant reported that he had stolen and traded to Stacy Fisher for cocaine three days before Fisher's arrest.

This discovery, which was included in the affidavit in support of the search warrant application, is sufficient accurate and untainted evidence to establish probable cause for a search warrant. The Court is convinced that the affidavit and search warrant were valid even without the reference to the handgun. Therefore, the Court finds that the handgun—and all of the other evidence obtained—would have been inevitably discovered under a valid search warrant.

**IT IS THEREFORE ORDERED** that the Motion to Suppress (Doc. 20) is hereby **DENIED**.

**IT IS SO ORDERED**.

Dated this 27th day of March, 2014.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE